Filed 9/30/15  Rattan v. Prasad CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| KOMAL RATTAN,<br><br>        Petitioner and Respondent,<br><br>v.<br><br>ABHIJIT PRASAD,<br><br>        Respondent and Appellant. | A139757, A140470<br><br>(Alameda County<br>Super. Ct. No. VF07356209 ) |

Abhijit Prasad appeals from an order modifying child support and awarding attorney's fees.  He contends the calculation of his income was not supported by substantial evidence and that the court erred when it ordered him to share certain additional specified expenses and declined to impute income to the children's mother, Komal Rattan.  Prasad also challenges orders requiring him to look and apply for employment, establish a child support security account, and pay $10,000 for Rattan's attorney's fees. We affirm.

## BACKGROUND

Rattan and Prasad, the parents of two children, divorced in June 2010 pursuant to a judgment that terminated their marital status and reserved the family court's jurisdiction over all other issues.  The court ordered Prasad to pay monthly child support of $1,669 effective July 2010, based on his annual income of $80,000, and reserved jurisdiction to modify the award.  On October 18, 2011, Prasad moved to modify the child support order.

1

After a number of delays, the motion was heard on April 4 and August 21, 2012, and January 2 and April 10, 2013.[1]  Both parties were represented by counsel. Both testified, and both provided the court with written closing arguments, and subsequently, objections to the court's tentative decision.  The court's detailed statement of decision and order included the following findings.

The children lived full time with their mother, Rattan.  Prasad had not had visitation since October 2011.  Rattan had received Social Security disability benefits of $2,300 per month since October, 2011.  She remained totally disabled as of July 2013.

We will quote at length the court's findings on Prasad's income and employment.  "[Prasad] is the owner of Maremarks, a solely owned corporation, which has not been joined as a party.  [Prasad] described Maremarks as basically a management employment service, locating employees for high tech positions—mainly, if not exclusively, with Cisco.  Many of the positions are filled by immigrant workers and Maremarks handles the immigration issues.  The employees, because of their expertise, receive high salaries, $40-80 per hour of which Maremarks gets about $5 per hour.  Maremarks covers the employees' health benefits plus 'hiring expenses' which may include referral fees and INS processing fees.  After those are paid, the profit margin is about $2-3 per hour.  Maremarks needs three to four placements in order to break even.  [Prasad] testified that just prior to laying himself off, there were 10 placements, seven of which resigned, leaving him and two others.  When he was laid off from his assignment, he laid himself off from the corporation on September 30, 2011, as there were insufficient funds to maintain the business with only two placements.  The other two employees are still working but respondent stated that once a placement has been made, he can't change the personnel.  One employee is working as a business development manager and the other as a Cisco account manager.  [Prasad] testified that he has never worked as a business manager (though he manages Maremarks) but has performed the services of an account

---

[1] Remaining issues as to spousal support were heard in a different department and are not at issue in this appeal.

manager. [His] background and training is in specialized IT technical and management services and he has [an] MBA in technology management from either 2001 or 2002.

"Since September 30, 2011, [Prasad] has been collecting unemployment benefits in the amount of $1,950 per month. He testified that the business continued to pay his health insurance for 6 months based on the company policy and paid $800 per month towards his in-home office until April, 2012. He has continued to run the business but, since there is insufficient income, he receives no salary and, according to [Prasad], EDD approved his benefits knowing he was running Maremarks for no salary. He stated that revenues received include the salaries of the remaining two placements and cannot be considered corporate income. His K-1 for 2011 shows a loss of $1,089 and for 2012, a loss of $6,364. Basically, he described that he works full time either trying to find placements for himself or for other potential employees. Though [Prasad] continued to process applications for himself and others, no one has been placed through Maremarks since October, 2011. . . . On April 10, 2013, he testified that he had no earned income. He listed $16 per month in dividend income on his Income and Expense Declaration.

"The bank records show that between October, 2011 and January, 2013, Maremarks paid home office expenses for [Prasad] in the amount of $5,437.50, not considering the $800 per month [he] testified for the time he was living in Tracy. He also received health insurance for eight months totaling $6,576.88, utility reimbursements of $511.66, car expenses (registration, insurance and an oil change) of $1,579.28 and legal fees paid to [his divorce attorney] in the amount of $4,145.77. The court also considered his moving expenses and office cleaning. All these expenses occurred while [Prasad] was working for free and collecting unemployment benefits and . . . listed the company accounts payable debt as his debt on his Income and Expenses Declaration filed April 3, 2013. These may be business expenses as far as the IRS is concerned, but he is the sole owner of the corporation and these are basically personal expenses. These additional company benefits totaled $24,041.10 over a 16 month period for an average of $1,502.56 per month of non-taxable income. The court did not consider the expenses paid to/for Raymond Young, CPA., the reimbursement for the Terokyhn Project since there is no

3

evidence of when [Prasad] worked for the project, document transcription fees, attorney Joseph Kafka, reimbursements for incidents on 2/7 and 2/10/12, Young Law Offices and Oasin, as the court could not tell from the face of the checks, and there was no testimony to determine, whether these were true business expenses or of personal benefit to [Prasad]." The court found there was insufficient evidence to impute income to Prasad.

Neither Prasad nor Rattan appeared to have income available to pay their own attorney fees, much less contribute to the other party's fees. In 2009 and 2010, however, Prasad had withdrawn approximately $835,000 from a credit union account. After reviewing his Income and Expense Declarations from 2009 through 2013, the court found Prasad had not sufficiently accounted for $600,000 of that amount, "some used for non-family law legal fees and much sent to the Bank of India. This leaves a significant amount of funds unaccounted for from the Patelco Credit Union account withdrawals." Prasad claimed there were community property funds available to pay the parties' legal fees, but the court found no evidence of such funds.

Records from the Alameda County Department of Child Support Services showed that Prasad was significantly behind in child support, and that even if he prevailed on his motion his payments still fell short of the support that would have been due based only on his unemployment income. The court reduced retroactive child support to $850 per month for October 18, 2011, through January 31, 2012, and $814 per month for February 1 through May 31, 2012, and ordered Prasad to pay $1,200 in monthly support commencing June 1, 2012. Prasad was required to reimburse Rattan for health insurance premiums she incurred since June 9, 2010, and as of July 1, 2013, to pay an additional $226 per month in child support to cover the children's health insurance. The parties were ordered to equally share the cost of the children's piano and swimming lessons from October 18, 2011.

The court set a further hearing pursuant to the terms of the judgment of dissolution to consider Prasad's obligation to pay for certain uninsured medical expenses. It ordered Prasad to establish a child support security account in the amount of $8,000 if he was not current on all child support obligations by September 17, 2013, and to apply for at least

4

20 jobs per week and provide monthly logs of his job search. Prasad was also ordered to pay Rattan $10,000 for attorneys' fees.

This appeal timely followed.

## DISCUSSION

### I. Child Support

"A decision modifying a child support order will be affirmed unless the trial court abused its discretion, and it will be reversed only if prejudicial error is found upon examination of the record. [Citation.] 'Although precise definition is difficult, it is generally accepted that the appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered. [Citations.] . . . [W]hen two or more inferences can reasonably be deduced from the facts, a reviewing court lacks power to substitute its deductions for those of the trial court.' [Citation.] The burden is on the complaining party to establish abuse of discretion. [Citation.] The showing on appeal is insufficient if it presents a state of facts which simply affords an opportunity for a difference of opinion. [Citation.] [¶] 'We observe, however, that the trial court has "a duty to exercise an informed and considered discretion with respect to the [parent's child] support obligation. . . ." [Citation.] Furthermore, "in reviewing child support orders we must also recognize that determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule. . . ." [Citation.] In short, the trial court's discretion is not so broad that it "may ignore or contravene the purposes of the law regarding . . . child support. . . ." [Citations.]' " (*In re Marriage of Heiner* (2006) 136 Cal.App.4th 1514, 1519–1520.)

To the extent Prasad challenges the court's factual determinations, our review is limited to determining whether they are supported by substantial evidence. (*In re Marriage of Heiner, supra*, 136 Cal.App.4th at pp. 1519–1520.) "[W]e examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. [Citation.] We accept all evidence favorable to the prevailing party as true and discard contrary evidence. [Citation.]' [Citation.] 'We do

5

not reweigh the evidence or reconsider credibility determinations. [Citations.]' " (*In re Marriage of Calcaterra & Badakhsh* (2005) 132 Cal.App.4th 28, 34.)

The court's calculation of Prasad's income was based on $1,950 in monthly unemployment compensation and $19,895.23 in payments from Maremarks between October 2011 and January 2013. The Maremarks payments averaged $1,502.56 per month, for miscellaneous home office and car expenses, utilities, and health insurance premiums. Prasad claims the Maremarks payments were not income but reimbursements for business expenses, and that the court "made no effort to sort out valid business expenses that were required to operate the business from those that were not essential and reduced Prasad's living expenses." The court reasonably rejected this characterization, carefully distinguishing between costs it determined, based on the evidence, were "basically personal expenses" and other payments from Maremarks (such as for an accountant's fees and attorneys' fees other than for Prasad's divorce proceedings) that were not shown to be personal rather than business expenses. [2] Prasad's insistence that *all* of those payments were reimbursement for the cost of operating Maremarks from his home is premised on his testimony, but the court quite plainly did not believe him and we may not second-guess its credibility determination.

Prasad also argues the court failed to consider his actual income at the time of the support hearing, but instead based its award of child support (including add-ons) on unemployment benefits he claims he stopped receiving after mid-March, 2013. But no evidence that his unemployment was terminated was introduced during the multi-day hearing. He did make this assertion in objections to the court's tentative decision, but the court was neither required to consider purported evidence submitted without testimony or authentication after the hearing had concluded or, if it did, to find it credible. Indeed, Prasad's position on appeal would require us to reject the trial court's assessment of his credibility. That is not our function. "[W]e have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to

---

[2] As noted in the statement of decision, Maremarks also paid $4,145.77 to Prasad's divorce attorney. Prasad does not contend that this, too, was a business expense.

6

resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom." (9 Witkin, Cal. Procedure (5th ed. 2008) 424-425, §365, quoting *Overton v. Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 370.)

Prasad makes similar missteps on appeal in asserting that the court "used many other numbers in Dissomaster which were different than the actual evidence that was before it which was indeed summarized in its order." Specifically, as we understand it, he contends the court misstated his health insurance costs in computing Dissomaster support, although he concedes the judgment itself reflects the correct figures.[3] Prasad did not raise this alleged deficiency when he objected to the court's tentative decision. If "a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court . . . , it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." (Code Civ. Proc., § 634.) Prasad failed to raise the alleged error in response to the tentative decision, so he forfeited "the right to claim on appeal that the [decision] was deficient" based on "omissions or ambiguities" that could have been brought to the trial court's attention. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134.)

Prasad also seems to assert the court ordered him to pay for certain of his children's extracurricular activities—swimming and piano lessons—without adequate notice or evidence. But Rattan claimed those add-on expenses in an income and expense declaration filed on August 8, 2012. Prasad had every opportunity to challenge those expenses during the subsequent evidentiary hearings on his motion.

---

[3] Prasad misrepresents the record on Rattan's health insurance. He claims she had health insurance for part of the relevant period through a job at Oracle, so it was error for the court to record her health insurance costs as zero. In fact, the testimony he cites for this alleged error was Rattan's testimony that she currently maintained and paid for health insurance for their children. Her testimony about her own health insurance, which Prasad does not cite, was that she is insured through Medicare and has substantial out of pocket costs for medications.

7

## II. Imputed Income

Prasad fares no better in asserting the trial court abused its discretion when it declined to impute income to Rattan. The court reasonably credited evidence that Rattan was diagnosed with ulcerative colitis in 2003, went on state disability in 2009 due to the illness and related side effects that prevented her from working, and that the Department of Social Services had recently found that her disability was continuing. "With rhythmic regularity it is necessary for us to say that where the findings are attacked for insufficiency of the evidence, our power begins and ends with a determination as to whether there is any substantial evidence to support them." (*Overton v. Vita-Food Corp., supra*, 94 Cal.App.2d at p. 370, italics omitted.) Prasad's repetition of the opposing testimony and arguments presented unsuccessfully at trial suggests he does not appreciate this limitation on our review.

## III. Work Search Order and Child Support Security Deposit

The court ordered Prasad to apply for at least 20 jobs per week and to provide Rattan's attorney and the department of child support services with a monthly log of those applications. Prasad asserts this too was an abuse of discretion. Again, we disagree.

Pursuant to Family Code section 4505, subdivision (a), a court may require an unemployed parent who is in default on a child support order to submit documentation showing that he or she has actually looked for work. A seek-work order is reviewed for abuse of discretion and is subject to reversal on appeal where there is no reasonable basis for the court's action. (*Barron v. Superior Court* (2009) 173 Cal.App.4th 293, 298–299.) Prasad has a bachelor's of engineering degree in computer science, an MBA in technology management, and work experience as an IT business analyst with a specialization in enterprise resource planning. He was earning $80,000 as an IT analyst through Maremarks until he laid himself off in October 2011 and went on unemployment. He has not held a paying job since then, although while collecting unemployment, he continued to work without compensation as Maremarks's president. His testimony about

8

his efforts to find new employment can perhaps best be characterized as vague.[4] On this record, it was reasonable to require Prasad to diligently seek employment and provide documentation of his efforts. Although Prasad tells us it is "inconceivable" that he would be able to locate 20 suitable job openings per week to apply to, there is no evidence currently in this record to compel that conclusion.

Prasad's contention that the court abused its discretion when it ordered him to establish an $8,000 child support security account unless he was current on child support by October 31, 2013, is also unpersuasive. Section 4012 of the Family Code permits a court to order a parent required to make child support payments to give reasonable security for the payment upon a showing of good cause. Subdivision (a) of Family Code section 4560 specifically provides that every child support order "may also require the payment by the child support obligor of up to one year's child support" and subdivision (b) of that section states that "[u]nless expressly waived by the child support obligee, the court may order the establishment of a child support trust account pursuant to this chapter in every proceeding in which a child support obligation is imposed by order of the court." By March 7, 2013, despite enforcement efforts by the Department of Child Support Services, Prasad was thousands of dollars behind on child support and his payments were inadequate to cover his current support obligations, let alone the arrears. That record manifestly provided good cause to require a support security account under Family Code section 4560.

### IV. Attorney's Fees

The court found that the fees requested by both parties appeared to be reasonable, but that "neither party appears to have income available to pay their own attorney fees, much less contribute to those of the other party." Using figures from Prasad's income and expense declarations, the court found that his expenses since 2009 exceeded his income and debt by approximately $30,000 plus some $200,000 in legal fees paid to his

---

[4] Prasad's Income and Expense Declaration, filed August 2012, indicated he was working for Maremarks 40 hours per week, but he testified that this was time spent looking for a job.

9

attorney. But as stated above, Prasad had withdrawn approximately $835,000 from the Patelco Credit Union in 2009 and 2010, and "[t]here was insufficient explanation at the hearings as to how the remaining funds were spent, some used for non-family law legal fees and much sent to the Bank of India. *This leaves a significant amount of funds unaccounted for from the Patelco Credit Union account withdrawals.*" (Italics Added.) Although Prasad alleged there were funds available to pay fees from jointly owned property, the court found that no evidence was presented during the hearings to support that claim. Based on the unaccounted-for withdrawals, it ordered him to pay $10,000 for Rattan's attorney's fees and costs.

"[T]he proper legal standard for determining an attorneys' fees award requires the trial court to determine how to apportion the cost of the proceedings equitably between the parties under their relative circumstances. [Citation.] In making this determination, the trial court has broad discretion in ruling on a motion for fees and costs; we will not reverse absent a showing that no judge could reasonably have made the order, considering all of the evidence viewed most favorably in support of the order." (*In re Marriage of Falcone & Fyke* (2012) 203 Cal. App. 4th 964, 975.) Prasad complains that the court awarded these fees "for some inexplicable reason, and without any evidence" in reliance on "a reference to some old separate account of Prasad" and "conjectured that some money must have been left over in that account to pay for attorney's fees" despite testimony that there was none. He adds that the account had been closed in July 2010, so it was "non-existent" and therefore "should not have been used by the Court to pay attorney's fees." His argument mischaracterizes the court's careful comparison of Prasad's claimed income and expenses and the money missing from the Patelco account. His argument that the court could not consider his withdrawals because the Patelco account had since been closed is no less absurd, as the court identified the withdrawn funds, not the account from which Prasad withdrew them, as available for attorney's fees. The fee award was within its broad discretion.

In summary, the orders Prasad challenges here are within the court's discretion and supported by sufficient evidence.  There is no basis to disturb its determinations.  The various requests for sanctions made by both parties during the appeal process are denied.

## DISPOSITION

The orders are affirmed.

_____
Siggins, J.

We concur:


_____
Pollak, Acting P. J.


_____
Jenkins, J.


*Rattan v. Prasad*, A139757, A140470

12